WHEN RECORDED MAIL TO

Brandywine Abstract Company, LP
1062 Lancaster Avenue, Suite 15-D
Rosemont, PA 19010-1552
610-519-9300
Fax: 610-519-9301

Loan Number : 0116253509
~~0100253509~~

07181 3

RECORDER OF DEEDS
DELAWARE CO. PA.

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# MORTGAGE

**THIS MORTGAGE** (" Security Instrument") is given on          October     30, 2000
The mortgagor is  PATRICK   MCHUGH

("Borrower"). This  Security Instrument is given to
WILLOW GROVE BANK
which is organized and existing under the laws of  THE UNITED STATES OF AMERICA        , and whose address is
WELSH & NORRISTOWN ROADS   PO BOX 3030, MAPLE GLEN, PA 19002-8030

("Lender"). Borrower owes Lender the principal sum of
Two Hundred Twenty-Five Thousand Dollars And 00/100
Dollars (U.S.$     225,000.00    ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for  monthly  payments, with the full debt, if not paid  earlier,  due and payable on
November     1, 2030 . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower does hereby mortgage, grant and convey to Lender the following described property located in
DELAWARE                                                                      County, Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"

which has the address of  2890 OLD CEDAR GROVE ROAD                     BROOMALL
                                        [Street]                                          [City]

Pennsylvania     19008          ("Property Address")
               [Zip Code]

**PENNSYLVANIA** -Single Family- **Fannie Mae/Freddie Mac**     **FORM INSTRUMENT**     Form  3039  9/90 (page 1 of 6 pages)
 Eastern   ITEM 1950 (9211)
Software
CORPORATION

TOGETHER WITH all the impro .ents now or hereafter erected on the prop. , and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant ar d convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real.property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums. if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge. an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice i ·tifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the givin, notice.

**5. Hazard or Property Insurance.** Borrower shall keep tl ·provements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the ter tended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance : )e maintained in the amounts and for the periods that Lender

Form 3039  9/90 (page 2 of 6 pages)

# COMMITMENT
## SCHEDULE A
### (continued)

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Hereditaments and Appurtenances, Situate in the Township of Marple, County of Delaware and State of Pennsylvania, described according to a Final Plan of Property for Clement C. O'Rourke, Jr., made by Howard W. Doran, Inc., and Associates, Registered Surveyor, Newtown Square, Pa., dated April 4, 1980 and last revised August 8, 1980 described as follows, to wit:

BEGINNING at a point on the Southwesterly side of Old Cedar Grove Road (50 feet wide) measured the (2) following courses and distances from a point marking the intersection of the Centerline of Old Cedar Grove Road with the title line of the bed of Barclay Avenue: (1) extending from said point of intersection along the said Centerline of Old Cedar Grove Road, South 32 degrees 49 minutes 50 seconds East 331.70 feet to a point; and (2) South 57 degrees 32 minutes 10 seconds West 25 feet to the point and place of beginning; thence extending from said beginning point along the said Southwesterly side of Old Cedar Grove Road South 32 degrees 49 minutes 50 seconds East 25 feet to a point; thence extending South 57 degrees 32 minutes 10 seconds West 561.71 feet to a point in line of lands now or late of Philadelphia Suburban Water Company; thence extending along same the (2) following courses and distances: (1) North 32 degrees 40 minutes 40 seconds West, 205.64 feet to a point; and (2) North 57 degrees 48 minutes 50 seconds East 251.76 feet to a point; thence extending South 32 degrees 27 minutes 50 seconds East 179.42 feet to a point; thence extending North 57 degrees 32 minutes 10 seconds East 310.56 feet to the first mentioned point and place of beginning.

BEING Lot No. 3 as shown on said Plan.

BEING the same premises which Andrew Rufo and Loretta Mazzenga, Robert Mazzenga and Helen Rufo, by Indenture bearing date the 19th day of January, A.D. 1984 and recorded in the Office for the Recording of Deeds, in and for the County of Delaware, aforesaid, in Volume 134 page 1490 &c., granted and conveyed unto Patrick McHugh, in fee.

BEING Folio No. 25-00-00708-04.

**EXCEPTING THEREOUT AND THEREFROM (IF ANY) THE PREMISES AS MORE FULLY DESCRIBED IN THE FOLLOWING DEED: NONE**

VOL 2067 PG 1712

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90 (page 3 of 6 pages)

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family -- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** -- Uniform Covenants 9/90  (page 4 of 6 pages)

# SECOND HOME RIDER

Loan Number : 0100253509

    THIS SECOND HOME RIDER is made on this 30th    day of    October    , 2000 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to WILLOW GROVE BANK

(the "Lender")

of the same date and covering the property described in the Security Instrument (the "Property"), which is located at:

       2890 OLD CEDAR GROVE ROAD, BROOMALL, PA 19008

[Property Address]

    In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Uniform Covenant 6 of the Security Instrument is deleted and is replaced by the following:

    **6. Occupancy and Use; Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times. and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that. in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy and use of the Property as a second home. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

MULTISTATE SECOND HOME RIDER -- Single Family -- Freddie Mac UNIFORM INSTRUMENT          Form 3890 9/90

■Eastern
Software
CORPORATION

ITEM 7099L1 (9612)          *(Page 1 of 2 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Second Home Rider.

_____ (Seal)          _____ (Seal)
PATRICK    MCHUGH          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                              -Borrower

*[Sign Original Only]*

Form 3890 9/90

VOL2087 PG1715

# ADJUSTABLE RATE RIDER
## (1 Year Treasury Index - Rate Caps)

Loan Number : 0100253509

THIS ADJUSTABLE RATE RIDER is made this 30th day of October, 2000 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to WILLOW GROVE BANK

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2890 OLD CEDAR GROVE ROAD, BROOMALL, PA 19008

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 9.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) **Change Dates**
The interest rate I will pay may change on the first day of November, 2002 , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) **The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) **Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding Three And One-Quarter percentage points ( 3.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER - ARM 5-2 - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3111 3/85

ITEM 2064L1 (9612)  ■Eastern Software CORPORATION   *(Page 1 of 2 pages)*   GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

ﾘ0L2097 ﾘ61717

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.500 % or less than   9.500   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than   15.500 %.

**(E)  Effective Date of Changes**   or less than 9.50

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
PATRICK   MCHUGH                       -Borrower                                                            -Borrower

_____(Seal)          _____(Seal)
                                       -Borrower                                                            -Borrower

_____(Seal)          _____(Seal)
                                       -Borrower                                                            -Borrower

*[Sign Original Only]*

**Form 3111 3/85**

GREATLAND ■
ITEM 2064L2 (9612)                    *(Page 2 of 2 pages)*          To Order Call: 1-800-530-9393☐Fax 616-791-1131

specify for reinstatement) before sale o. che Property Aant Peale or sale c...tained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[XX] Adjustable Rate Rider      [ ] Condominium Rider      [ ] 1-4 Family Rider

[ ] Graduated Payment Rider      [ ] Planned Unit Development Rider      [ ] Biweekly Payment Rider

[ ] Balloon Rider      [ ] Rate Improvement Rider      [XX] Second Home Rider

[ ] Other(s)  [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 4 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____      _____ (Seal)
                                        PATRICK    MCHUGH                 Borrower

_____      _____ (Seal)
                                                                          Borrower

                                       _____ (Seal)
                                                                          Borrower

                                       _____ (Seal)
                                                                          Borrower

COMMONWEALTH OF PENNSYLVANIA,    _____ County ss:

On this, the _____ day of _____, _____, before me,
the undersigned officer, personally appeared  PATRICK    MCHUGH

                                                              known to me (or satisfactorily proven)
to be the person    whose name    _____    subscribed to the within instrument and acknowledged
that    _____    executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission expires:

NOTARIAL SEAL
INEZ A. EAGLE, Notary Public
Radnor Twp., Delaware County
My Commission Expires Nov. 24, 2003

_____
                                        Title of Officer

CERTIFICATE OF RESIDENCE         I,  DEBORAH WILLIAMS

do hereby certify that the correct address of the within named lender is
WELSH & NORRISTOWN ROADS   PO BOX 3030, MAPLE GLEN, PA 19002-8030

Witness my hand this   30th   day of   October   , 2000

_____
DEBORAH WILLIAMS

Agent of Lender

VOL2087 PG1720

**Form 3039** 9/90 (page 6 of 6 pages)

IN THE ~~Case 03:01 cv 00218 L~~ COMMON ~~Doc 318 Filed 07/30/03~~ PLEAS OF ~~Entered 07/31/03 12:42:27~~ DELAWARE COUNTY, PENNSYLVANIA ~~Desc~~

Exhibit A    Page 12 of 25

## NOTICE OF FILING OF MOTION OR PETITION UNDER
## LOCAL RULE OF CIVIL PROCEDURE 206 (B):
## NON FAMILY MATTER

CASE CAPTION: Willow Grove Bank                    CIVIL CASE NO.    02-5662
    - vs. -
    Patrick McHugh, a/k/a Patrick J. McHugh,
    et al.

NATURE OF MATTER LISTED:

    Petition to Enforce Stipulation of Settlement Dated May 2, 2003

A motion or petition was filed in the above captioned matter on the ___8th___ day of ___July___, ___2003___,

which: seeks to enforce the Settlement Agreement of May 2, 2003

[x] Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk

the entry of an Order in favor of the Petitioner. Answers must be filed and time stamped by the Office of

Judicial Support by 4:30 PM on the following date _____ _____, _____.

[ ] Requires you, Respondent, to appear at a hearing on the _____ day of _____, _____,

at _____ in Courtroom _____, Delaware County Courthouse, Media, Pennsylvania. At this hearing you must

be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

[ ] Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter:

_____ _____, _____ at 10:00 AM in Courtroom _____.

**You, Petitioner,** are responsible for notifying all interested responding parties of this hearing date at least ten

(10) days prior thereto.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that

their witnesses will be present.**

[ ] Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent

nor the scheduling of a hearing in this matter.

[ ] Has been assigned to Judge _____.

### FOR OFFICE USE ONLY

Mailing date: _____    "B"  Processed by: _____

JAFFE, FRIEDMAN, SCHUMAN
SCIOLLA, NEMEROFF, & APPLEBAUM, P.C.
BY: Daniel D. McCaffery, Esquire
Attorney I.D. #64969
Suite 200
7848 Old York Road
Elkins Park, PA 19027
(215) 635-7200                                    **Attorney for Plaintiff**

---

| | | |
|---|---|---|
| WILLOW GROVE BANK | : | COURT OF COMMON PLEAS |
| | : | Delaware County |
| v. | : | |
| | : | |
| PATRICK MCHUGH | : | |
| a/k/a PATRICK J. MCHUGH, | : | NO. 02-5662 |
| FOX MORTGAGE CORPORATION, | : | |
| DAVID J. ECK, | : | |
| PATRICIA MOGAN, | : | |
| KENT & KENT | : | |
| RAYMOND J. FONASH, and | : | |
| RAYMOND J. FONASH MORTGAGE | : | |

---

### ORDER

AND NOW this ____ day of _____, 2003 upon consideration of the Petition to Enforce the

Settlement Agreement of May 2, 2003 and any response thereto, it is hereby ORDERED and DECREED

that the Settlement Agreement of May 2, 2003 be and is hereby enforced.

It is further ORDERED and DECREED that sanctions are imposed against Respondent Patrick

McHugh a/k/a Patrick J. McHugh in the amount of $1,500.00 for the costs associated with the

preparation and presentation of the within Petition to Enforce Settlement Agreement.  In rem

judgment in the amount of $290,361.62 is hereby entered against Patrick McHugh a/k/a Patrick J.

McHugh.


_____
J.

JAFFE, FRIEDMAN, SCHUMAN
SCIOLLA, NEMEROFF, & APPLEBAUM, P.C.
BY: Daniel D. McCaffery, Esquire
Attorney I.D. #64969
Suite 200
7848 Old York Road
Elkins Park, PA 19027
(215) 635-7200                                          **Attorney for Plaintiff**

WILLOW GROVE BANK                    :        COURT OF COMMON PLEAS
                                     :        Delaware County
        v.                           :
                                     :
PATRICK MCHUGH                       :
a/k/a PATRICK J. MCHUGH,             :        NO. 02-5662
FOX MORTGAGE CORPORATION,            :
DAVID J. ECK,                        :
PATRICIA MOGAN,                      :
UNITED STATES OF AMERICA,            :
KENT & KENT                          :
RAYMOND J. FONASH, and               :
RAYMOND J. FONASH MORTGAGE           :

## PETITION TO ENFORCE STIPULATION OF SETTLEMENT DATED MAY 2, 2003

Petitioner, Willow Grove Bank (hereinafter "Willow Grove"), by and through its

attorneys, Daniel D. McCaffery, Esquire and Jaffe, Friedman, Schuman, Sciolla, Nemeroff &

Applebaum, P.C. hereby petitions this Honorable Court to enforce the terms of the Stipulation of

Settlement dated May 2, 2003 and, in support thereof avers as follows:

1.      On May 3, 2002, Willow Grove Bank filed a Complaint in Mortgage Foreclosure

against Patrick McHugh a/k/a Patrick J. McHugh (hereinafter "McHugh") in the Court of

Common Pleas of Delaware County at No.: 02-5662.

2.      On May 29, 2002, McHugh filed his Answer with New Matter and Counterclaim

to Plaintiff's Complaint and Mortgage Foreclosure.  McHugh's Counterclaim alleges that Willow

Grove engaged in fraud constituting a violation of Pennsylvania's Unfair Trade Practices and

Consumer Protection Law, Breach of Fiduciary Duty, Breach of the Duty of Good Faith and Fair

Dealing, Breach of Fiduciary Duty and Unjust Enrichment.

3.      McHugh's Counterclaim also alleges that pursuant to the loan transaction which

gives rise to the underlying Complaint in Mortgage Foreclosure, Willow Grove fraudulently

and/or negligently obtained an inflated appraisal which inflated the value of his property.

4.      On or about August 16, 2002, Willow Grove filed a Joinder Complaint pursuant

to Pennsylvania Rule of Civil Procedure 2252 (a) joining additional Defendants, Fox Mortgage

Corp. (hereinafter "Fox") and David J. Eck (hereinafter "Eck").

5.      The basis of the Joinder Complaint was that the appraisal prepared and submitted

in connection with the underlying loan transaction was prepared by Eck and ordered by Fox.

Further, Willow Grove Bank had no direct contact whatsoever with McHugh.  Rather, the loan

application was prepared by McHugh and submitted to Fox, the mortgage broker, who acted as a

go between in assisting McHugh during the loan application process.

6.      On or about October 15, 2002, Fox filed a Joinder Complaint against Patricia

Mogan (hereinafter "Mogan"), Kent & Kent (hereinafter "Kent"), Liam Haggerty (hereinafter

"Haggerty"), Raymond J. Fonash and Raymond Fonash Mortgage (hereinafter cumulatively

"Fonash") pursuant to Pennsylvania Rule of Civil Procedure 2252 (a).

7.      Fox's Joinder Complaint argued that the Joined Defendants acted as additional

advisors and/or assisted McHugh during the loan application process and assisted McHugh in

obtaining the mortgage loan at issue.

8.      On May 1 and 2, 2003, depositions were scheduled in the matter.  Prior to

McHugh's deposition which was to commence on or about 10:00 a.m. on May 2, 2003, counsel

for the parties engaged in several hours of negotiations and agreed to the terms and conditions of

a settlement agreement.

9.      By correspondence dated May 5, 2003, James Hennessey, Esquire, counsel for

McHugh confirmed the basic terms of the settlement agreement.  A true and correct copy of Mr.

Hennessey's correspondence dated May 5, 2003 is attached hereto, made part hereof and marked

Exhibit "A".

10.      By correspondence dated May 19, 2003, Willow Grove's counsel circulated the

original Stipulation of Settlement and asked that counsel for all parties review and, if acceptable,

have their clients execute the document in order to memorialize the settlement.  All counsel

subsequently revised the Stipulation of Settlement and said changes were incorporated therein.

11.      Thereafter, Willow Grove's counsel circulated the final agreed upon version of

the Stipulation of Settlement dated May 2, 2003 which incorporated the aforesaid revisions.  A

true and correct copy of the Stipulation of Settlement dated May 2, 2003 is attached hereto, made

part hereof and marked Exhibit "B".

12.      The Stipulation of Settlement obligates Willow Grove to compromise the amounts

due and owing under its Note and Mortgage to the amount of $260,000.00.  Further, both Eck

and Fox were to pay McHugh the amount of $7,500.00 as full and final settlement for any and all

claims instituted by him in the lawsuit.  Finally, on or before June 30, 2003, McHugh was to pay

Willow Grove $120,000.00 in cash or certified funds and modify the original Promissory Note

and Mortgage dated October 30, 2000 in favor of Willow Grove Bank in the form attached as

Exhibit "1" to the Settlement Agreement.

13.    On or about June 25, 2003, McHugh's counsel contacted Willow Grove's counsel and informed counsel that his client was unable to comply with the terms and conditions of the Settlement Agreement.

14.    Upon information and belief, all other parties remain ready, willing and able to consummate the terms and conditions of the Stipulation of Settlement dated May 2, 2003.

15.    Pursuant to paragraph 5 of the Stipulation of Settlement, McHugh was to execute a Stipulation for Entry of Judgment in Mortgage Foreclosure which Willow Grove's counsel was to hold in escrow. Upon default by McHugh of any of the terms and conditions of the Stipulation, Willow Grove possesses the right, without prior notice to McHugh, to file the judgment in the Court of Common Pleas of Delaware County in order to affect a Sheriff's Sale of the property. Further, pursuant to paragraph 5 of the Settlement Agreement, McHugh agrees that he will not contest or defend any mortgage foreclosure action which Willow Grove may commence upon default or any petition to reassess damages filed in such action.

16.    McHugh has defaulted under the terms and conditions of the Stipulation of Settlement dated May 2, 2003.

17.    Willow Grove is entitled to the entry of a judgment in mortgage foreclosure in the form attached as Exhibit "2" to the Settlement Agreement dated May 2, 2003.

WHEREFORE, Petitioner, Willow Grove Bank, respectfully requests this Honorable Court enforce the terms and conditions of the May 2, 2003 Stipulation of Settlement and enter judgment in favor of Willow Grove Bank and against McHugh in the sum of $290,361.62 plus interest at the rate 8% per annum and other costs and charges collectible under the mortgage, foreclosure and sale of the property calculable from the date of June 30, 2003.

JAFFE, FRIEDMAN, SCHUMAN,
SCIOLLA, NEMEROFF & APPLEBAUM, P.C.


BY:_____

DANIEL D. McCAFFERY, ESQUIRE
Attorney for Plaintiff, Willow Grove Bank

Date: 7/29/03

G:\HOME\JGEFTMAN\WILLOW GROVE 954.000\mchugh 954.001\petition to enforce settlement agreement.wpd

# VERIFICATION

I, DANIEL D. McCAFFERY, ESQUIRE, hereby verify that I represent the Plaintiff, Willow

Grove Bank, in the foregoing matter and that the allegations in the Petition to Enforce Stipulation

of Settlement Dated May 2, 2003 are true and correct to the best of my knowledge, information and

belief. I understand that the statements in the attached pleading are made subject to the penalties of

18 Pa.C.S. §4904 relating to unsworn falsification to authorities.


Date: 7/7/03

_____
DANIEL D. McCAFFERY, ESQUIRE

JAFFE, FRIEDMAN, SCHUMAN
SCIOLLA, NEMEROFF, & APPLEBAUM, P.C.
BY: Daniel D. McCaffery, Esquire
Attorney I.D. #64969
Suite 200
7848 Old York Road
Elkins Park, PA 19027
(215) 635-7200                                                  **Attorney for Plaintiff**

| | | |
|---|---|---|
| WILLOW GROVE BANK | : | COURT OF COMMON PLEAS |
| | : | Delaware County |
| v. | : | |
| | : | |
| PATRICK MCHUGH | : | |
| a/k/a PATRICK J. MCHUGH, | : | NO. 02-5662 |
| FOX MORTGAGE CORPORATION, | : | |
| DAVID J. ECK, | : | |
| PATRICIA MOGAN, | : | |
| UNITED STATES OF AMERICA, | : | |
| KENT & KENT | : | |
| RAYMOND J. FONASH, and | : | |
| RAYMOND J. FONASH MORTGAGE | : | |

## CERTIFICATE OF SERVICE

I, DANIEL D. McCAFFERY, ESQUIRE, hereby certify that a true and correct copy of

Plaintiff's Petition to Enforce Stipulation of Settlement dated May 2, 2003 was served upon all

counsel, via first class U.S. Regular Mail at the following address on July 7, 2003:

James W. Hennessey, Esquire
Dilworth Paxson, LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7599

Anthony W. Hinkel, Esquire
CIPRIANI & WERNER
Suite 126
484 Norristown Road
Blue Bell, PA 19422-2352

Norman Briggs, Esquire
FREY, PETRAKIS, DEEB,
BLUM, BRIGGS & MITTS
1601 Market Street, Sixth Floor
Philadelphia, PA 19103

Michael R. Bradley, Esquire
BROOKS, BRADLEY & KENNEY
Second & Plum Streets
Media, PA 19063


JAFFE, FRIEDMAN, SCHUMAN,
SCIOLLA, NEMEROFF & APPLEBAUM, P.C.


BY: _____
            DANIEL D. McCAFFERY, ESQUIRE
            Attorney for Plaintiff

G:\HOME\JGEFTMAN\WILLOW GROVE 954.000\mchugh 954.001\petition to enforce settlement agreement.wpd

RLF1-FILED

# DILWORTH PAXSON LLP

DIRECT DIAL:                                  LAW OFFICES                          James W. Hennessey
215-575-7160                                                                       jhennessey@dilworthlaw.com

May 5, 2003

Daniel D. McCaffery, Esquire ✓                      Anthony W. Hinkle, Esquire
**Jaffe, Friedman, Schuman, Sciolla,**              **Cipriani & Werner, P.C.**
**Nemeroff & Applebaum**                             Suite 126
Suite 200                                            484 Norristown Road
7848 Old York Road                                   Blue Bell, PA 19422
Elkins Park, PA 19027

Norman W. Briggs, Esquire                           Michael R. Bradley, Esquire
**Frey Petrakis Deeb & Blum**                        **Brooks Bradley & Kenney**
6th Floor, 1601 Market Street                        Second and Plum Streets
Philadelphia, PA 19103                               Media, PA 19063

Re:    Willow Grove Bank v. Patrick McHugh, et al

Gentlemen:

This letter will confirm that the above-captioned matter has been settled. Willow Grove
Bank will receive $260,000.00 in consideration for the satisfaction of its mortgage given to Mr.
McHugh in October of 2000 with respect to the property at 2890 Old Cedar Grove Road,
Broomall, Delaware County, Pennsylvania. Willow Grove Bank will receive $120,000.00 in
cash, $7500.00 from Fox Mortgage Corporation, $7500.00 from David J. Eck, and $105,000.00
from Patrick McHugh. Mr. McHugh's money will be paid within sixty days in order to allow him
to settle on the sale of certain property in Alaska. The balance of $140,000.00 will be paid by Mr.
McHugh pursuant to a fifteen year Note in the principal sum of $140,000.00 amortized at 8%.
Mr. McHugh will grant a $140,000.00 mortgage to Willow Grove Bank to secure the obligation
under the Note. It will be an event of default under the Note and Mortgage if Mr. McHugh does
not complete the construction of 2980 Old Cedar Grove Road, Broomall, Pennsylvania, within
one year of the execution of the Note and Mortgage or if he does not sell the property by that
date.

It is my understanding that Mr. McCaffery will prepare a Settlement Agreement to be
executed by all parties and will notify the Court that the matter has been settled.

494355_1

3200 MELLON BANK CENTER  •  1735 MARKET STREET  •  PHILADELPHIA PA 19103-7595
(215) 575-7000  •  FAX (215) 575-7200  •  www.dilworthlaw.com

                                                                    AFFILIATED OFFICE
CHERRY HILL NJ    HARRISBURG PA    NEWTOWN SQUARE PA    TURNERSVILLE NJ    WASHINGTON DC    WILMINGTON DE

Daniel D. McCaffrey, Esquire
Anthony W. Hinkle, Esquire
Norman W. Briggs, Esquire
Michael R. Bradley, Esquire
May 5, 2003
Page 2

If you have any questions, please contact me.

Very truly yours,

James W. Hennessey

JWH:def
Enclosure

cc:    Michael R. Bradley, Esquire (with enclosure)
       Norman W. Briggs, Esquire (with enclosure)
       Anthony W. Hinkel, Esquire (with enclosure)

494355_1